# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00758-SCT

*TOMMIEL Q. CLAIBORNE a/k/a TOMMIE LEE*
*CLAIBORNE, JR. a/k/a TOMMIE L. CLAIBORNE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2014 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | M.A. BASS, JR. |
| | NICKITA BANKS |
| | ALEXANDER MARTIN |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/20/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Tommie Claiborne appeals from his conviction of murder and sentence of life. According to three eyewitnesses, Claiborne chased his wife around a car, grabbed her, and shot her three times the day before their scheduled divorce hearing. Claiborne's appellate counsel filed a brief in compliance with ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005),

certifying to this Court that the record presented no arguable issues for appeal. Claiborne has filed a *pro se* brief asserting ineffective assistance of counsel, that the State violated discovery rules, that the eyewitnesses at trial contradicted their earlier statements to police, and that he was denied his right to a speedy trial.

¶2.    After a thorough review of Claiborne's *pro se* brief and the record, we find that Claiborne's appeal presents no arguable issues, and that no supplemental briefing is necessary. Claiborne's arguments that the State committed discovery violations, that the eyewitnesses changed their stories, and that he was denied a speedy trial clearly are without merit. Claiborne's other issues of ineffective assistance of counsel are dismissed without prejudice to his ability to raise them in post-conviction proceedings. We affirm Claiborne's conviction and sentence.

## FACTS

¶3.    According to three eyewitnesses, on the afternoon of August 22, 2011, Tommiel Claiborne shot and killed his wife Luna Claiborne in the front yard of Deborah and Cornelius Thornton in Port Gibson. Luna and Tommiel were separated and Luna was living with the Thorntons at the time of the murder. Earlier in the day, Tommiel came by in a red Toyota driven by Roy Herrington and stopped and talked to Luna. Deborah testified that Tommiel seemed to be trying to reconcile with Luna but that Luna did not want to talk with him. Roy and Tommiel left, and Deborah went into the house.

¶4.    Later, shortly after noon, from inside the house, Deborah heard "something that sounded like a firecracker . . . pow, pow," and heard Luna screaming for Deborah to call the

police. Deborah called the police, then opened the door and saw Tommiel chasing Luna around a car. Tommiel grabbed Luna "by the neck" and shot her "until she hit the ground." Deborah testified that "once [Luna] hit the ground, [Tommiel] stood up over her and shot her . . . a couple of more times . . . ," then walked away.

¶5.     Cornelius Thornton testified that he had known Tommiel since childhood. On August 22, he overheard the morning argument from inside the house where he was busy on the computer. He was out in the yard smoking when Tommiel walked by after noon. Luna was in the yard, sitting under a tree with a man named John Paul Thornton who was staying in a trailer home on the Thornton property. Cornelius testified that someone said something that Cornelius did not hear, then Tommiel crossed over the street and came to where Luna and John Paul were sitting, at which time Luna "jumped up and ran." Cornelius saw Tommiel chase Luna around the car while she called out for the police to be called. He could see that Tommiel had a "little pistol in his hand." He "grabbed her around the head, put her in a head lock" and shot her in the head. Then Tommiel let Luna fall to the ground and "stood over her" and shot until the pistol was empty, then took off down the street.

¶6.     The third eyewitness, Willie Roy Parker, testified that he was sitting on his porch when he heard two gunshots; he looked around and saw Tommiel holding Luna. Tommiel then fired two more shots, at which point Willie jumped off the porch and ran toward Tommiel saying, "don't do that man" several times. As he got closer, Willie said that he saw Tommiel put the pistol to Luna's forehead and shoot her. Willie said she fell on her back and

3

that Tommiel stood over her and shot at her least two more times. Claiborne was apprehended a few miles away later that afternoon. The gun was never recovered.

¶7. Claiborne was indicted on December 8, 2011. He was arraigned on January 4, 2012, and, according to his arraignment order, trial was set for January 10, 2012. Also on January 4, 2012, Claiborne's attorney filed a request for Claiborne to receive a psychological examination. The same day, the court entered an order for psychological examination and appointed Dr. Criss Lott to conduct the examination. Dr. Lott attempted to evaluate Claiborne on January 5, 2012. However, Claiborne was uncooperative, and halfway through the evaluation refused to continue. Dr. Lott's report stated that "[a]s Mr. Claiborne refused to complete the evaluation, he will need to be sent to the Forensic Services at Mississippi State Hospital for further evaluation." On January 24, 2012, Claiborne filed a motion requesting "mental evaluation and treatment" to take place at the Mississippi State Hospital at Whitfield. The motion was granted by an order issued on January 25, 2012.

¶8. After a delay due to backlog at the State Hospital at Whitfield, on January 24, 2013, the trial court issued a second order for Claiborne to examined by Dr. Lott. Claiborne again refused to cooperate with Dr. Lott. The court issued another order for mental evaluation and treatment at Whitfield on January 26, 2013. On February 11, 2014, Claiborne received an inpatient forensic mental evaluation at Whitfield. The report, provided to the trial court on February 13, 2014, provided that, in the doctors' unanimous opinions, Claiborne was mentally sane at the time of the crime and was competent to stand trial. On March 17, 2014, Claiborne filed a motion to dismiss on the ground that his right to a speedy trial was violated.

4

This motion was denied. Defense counsel renewed the motion at the start of trial, and the court denied the motion again, stating:

> the basis for the Court overruling the motion for speedy trial was the delay was caused by the motion filed by the defendant for a medical – psychological mental evaluation. The state – the Court was informed that the state has called – the state's attorneys called the state hospital on numerous, numerous occasions trying to get them to do this thing and just were told there was a backlog and they would have to get to it as quick as they could. Now, there's nothing to prevent the defendant from getting a mental evaluation on his own, and if that had been the case, then the Court may look at it differently. But the prosecution had nothing to do with the delay. That was caused by the defendant's request. In an intention to comply with the defendant's request, the 270 days had expired.

The prosecution also noted for the record that Dr. Lott had twice attempted to evaluate Claiborne and that Claiborne had been uncooperative.

¶9.    The State also presented testimony from Claiborne County Chancery Clerk Gloria Dotson. Dotson testified that a divorce complaint was filed February 22, 2011, styled "Luna Hillary Claiborne v. Tommie L. Claiborne." The divorce complaint represented that Tommiel and Luna were married on November 4, 2010, in Tallulah, Louisiana and separated five days later on November 9, 2010, in Claiborne County. Dotson authenticated a copy of a Notice of Hearing for August 23, 2011, which was admitted into evidence. The jury returned a guilty verdict on May 6, 2014, and on the same day Claiborne was sentenced to life.

**DISCUSSION**

¶10.    In *Lindsey*, this Court adopted a procedure "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748. First, "counsel must file

5

and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4),(7)." *Id*. In the brief,

> counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; © the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id*. Next, counsel must forward a copy of the brief to the client, informing the client that counsel was unable to discover any arguable issues in the record, and advise the client that he or she has a right to file a *pro se* brief. *Id*. If the defendant's *pro se* brief raises any arguable issue or the appellate court discovers any arguable issue in its review of the record, then "the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal." *Id*. After the completion of the briefing, "the appellate court must consider the case on its merits and render a decision." *Id*.

¶11.　　Here, counsel has submitted a brief in compliance with *Lindsey*. Claiborne has filed a *pro se* brief arguing that he received ineffective assistance of counsel, that the State committed discovery violations, that the eyewitnesses gave inconsistent statements, and that he was denied his right to a speedy trial. After a thorough review, we find that the record shows no arguable issues for appeal, and that Claiborne's *pro se* brief raises no arguable issues. Supplemental briefing is not warranted. *See **Byrd v. State***, 158 So. 3d 1146, 1150

(Miss. 2015); ***Havard v. State***, 94 So. 3d 229, 235 (Miss. 2012). We briefly address the issues raised by Claiborne's *pro se* brief.

## I.    ***Brady* and Discovery Violations**

¶12.    Claiborne argues that the State failed to disclose the results of a gunshot-residue test, and that the State violated the discovery rule by failing to give notice that it intended to put on testimony by the chancery clerk that Claiborne and the victim had a divorce hearing scheduled. No gunshot-residue evidence was presented at trial by either side. Claiborne attaches a report (not made part of the appellate record) to his *pro se* brief indicating that Claiborne's hands were "swabbed" for gunshot residue, and that Claiborne filed *pro se* motions requesting the results of any gunshot-residue testing. At trial, defense counsel explicitly stated to the bench at the end of trial that the defense had elected not to present any gunshot-residue evidence "as a matter of trial strategy."[1]

¶13.    In determining whether a ***Brady*** violation has occurred, this Court applies the four-part ***Brady*** test adopted in ***King v. State***, 656 So. 2d 1168, 1174 (Miss. 1995), under which a defendant must show

   a)    that the State possessed evidence favorable to the defendant (including impeachment evidence);

   b)    that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence;

   c)    that the prosecution suppressed the favorable evidence; and

---

[1] This exchange arose when Claiborne asked to address the jury before it left for deliberation. Claiborne intended to address the jury on the issue of gunshot residue. While the judge was willing to permit Claiborne to speak, he would not permit discussion of evidence that was not admitted at trial. Claiborne ultimately chose not to address the jury.

d)     that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Id*. at 1174. ***Carr v. State***, 873 So. 2d 991 (Miss. 2004); *see* ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Here, it is not apparent from the record that the State possessed and suppressed evidence favorable to the defense. Moreover, defense counsel expressly stated on the record that the decision not to submit gunshot-residue evidence was made consciously pursuant to trial strategy. Claiborne has failed to demonstrate a ***Brady*** violation.

¶14.    Claiborne also argues that the State failed to disclose its intent to call the chancery clerk to testify that he had a divorce hearing scheduled for the day after the murder. At trial, defense counsel did not object to the clerk's testimony on the ground of unfair surprise, and the record does not indicate that the witness was, in fact, unexpected. Rather, the defense objected to the clerk's testimony as irrelevant. The court overruled the objection.

¶15.    We review a trial court's decisions on discovery violations and whether or not to admit evidence for abuse of discretion. ***Conley v. State***, 790 So. 2d 773, 782 (Miss. 2001). A failure to request a continuance or mistrial when faced with an undisclosed witness or evidence results in waiver of a violation of the rule governing admission of untimely or nondisclosed evidence. *See* Uniform Circuit and County Court Rule 9.04(I)(1-2); ***Magee v. State***, 124 So. 3d 64, 70 (Miss. 2013). Here, the trial court did not abuse its discretion in

overruling Claiborne's objection, and if the witness was indeed unexpected, Claiborne waived his right to object.[2]

## II.  Ineffective Assistance of Counsel

¶16.  Claiborne argues that he was denied effective assistance of counsel. He asserts that trial counsel had a conflict of interest because trial counsel would not file certain motions Claiborne wanted him to file. He argues that trial counsel issued a subpoena to a crime lab expert ordering him to appear in Hinds County, not Claiborne County, that a corrected subpoena was not served until the day before trial, and that the expert did not show up for trial. He does not identify the expert or to what the expert would have testified.

¶17.  Issues of ineffective assistance of counsel are most appropriately raised in post-conviction proceedings. *Byrd v. State*, 158 So. 3d 1146, 1150 (Miss. 2015); *Keithley v. State*, 111 So. 3d 1202, 1206 (Miss. 2013) (quoting *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). "This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Archer*, 986 So. 2d at 955. Claiborne points to nothing in the record to support a finding that defense counsel failed to subpoena a witness whose testimony would be favorable and that, if the omission had not occurred, the

---

[2] Claiborne also argues that the eyewitnesses "recanted" their testimony by giving a different version of events at trial than they did in prior statements to the police. A review of the transcript indicates that witnesses made substantively the same observations they made to the police, simply in different words and with greater elaboration under examination. It ". . . is within the province of the jury to decide which witnesses are credible and to resolve the conflicts in the testimony that they hear." *Jones v. State*, 920 So. 2d 465, 472-73 (Miss. 2006). This issue is without merit.

9

outcome at trial likely would have been different. *See **Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Because these issues of ineffective assistance of counsel are not based on facts fully apparent from the record, we dismiss them without prejudice to Claiborne's ability to raise them in appropriate post-conviction proceedings.

### III.    Speedy Trial

¶18.    Claiborne argues that he was denied the right to a speedy trial. A delay of more than 270 days is presumptively prejudicial, triggering a consideration of four factors to determine whether the constitutional right to a speedy trial has been violated: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right, and (4) prejudice to the defendant. *See **Barker v. Wingo***, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Here, the record reflects that the trial, initially scheduled for a few days after arraignment, was delayed due to Claiborne's request for a mental evaluation and his repeated failure to cooperate with the doctor who was immediately available to perform the evaluation. Claiborne's trial took place within two months after he completed a forensic mental evaluation. The length of delay did not affect the ability of three eyewitnesses to testify at trial. A balancing of the ***Barker*** factors on the facts of this case leads to the conclusion that Claiborne was not denied the right to a speedy trial.

### CONCLUSION

¶19.    We find that the State met the requirements for filing a *Lindsey* brief, and that an order for supplemental briefing therefore is not necessary. The issues raised *pro se* by Claiborne are without merit, and his conviction and sentence are affirmed.

¶20.    **CONVICTION OF FIRST-DEGREE MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

      **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**