MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 163
Docket:        Wal-16-17
Submitted
 On Briefs:    October 13, 2016
Decided:       November 8, 2016

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ADAM D. GERRY

ALEXANDER, J.

[¶1]   Adam D. Gerry appeals from the judgment of the trial court (Waldo County, *Worth, J.*) finding him guilty of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A), (5) (2015), following a conditional guilty plea, *see* M.R.U. Crim. P. 11(a)(2).   On appeal, Gerry contends that the motion court (*R. Murray, J.*) erred in denying his motion to suppress because his detention by law enforcement, which ultimately led to the charge of operating under the influence, was not based on a reasonable, articulable suspicion.   We affirm the judgment.

I.  CASE HISTORY

[¶2]   In its order denying the motion to suppress, the court found the following facts, which are supported by the record reviewed in the light most

2

favorable to the court's order.  *See State v. Kierstead*, 2015 ME 45, ¶ 2, 114 A.3d 984.

[¶3]  On April 18, 2015, an officer of the Belfast Police Department was on patrol in Belfast.  At approximately 1:00 a.m., the officer observed a vehicle turn off of Main Street and into the parking lot of a drug store, which had been closed for several hours.  The vehicle came to a stop and its lights were turned off.  The officer thought it was unusual, at that hour, for a vehicle to pull into that parking lot, park, and have its lights turned off.  Thinking that there may be a burglary in progress, and wanting to investigate further, the officer proceeded up the street a short distance, turned around, and returned to the parking lot.

[¶4]  Upon returning to the parking lot, the officer drove around the back side of the drug store looking for anything unusual.  When he did not observe anything unusual behind the store, he continued around the building to where the vehicle he had seen was parked.  The officer could not see anyone inside the vehicle, so he used his spotlight to illuminate the car, at which time Gerry, who apparently had been reclined in his seat, sat up so that he was visible.

[¶5]  At that point, the officer approached Gerry and asked him if he was "all right and what he was doing."  Once the officer communicated with Gerry, he could smell alcohol coming from him.  Due to the smell of alcohol, the officer's inquiry and investigation shifted to an investigation of possible operation of a motor vehicle while under the influence of intoxicants.

[¶6]  Gerry was charged with operating under the influence pursuant to 29-A M.R.S. § 2411(1-A)(A).  On July 15, 2015, Gerry moved to suppress evidence obtained during the detention and arrest, arguing that the police interaction with him constituted an unlawful detention that was not supported by a reasonable articulable suspicion.

[¶7]  A testimonial hearing on the motion was held on September 2, 2015.  For purposes of the motion to suppress, the State conceded that the officer's interaction with Gerry constituted a seizure.

[¶8]  In a written order, the court denied Gerry's motion.  The court found that the officer had a reasonable articulable suspicion of criminal conduct from his observation of Gerry pulling into the parking lot of a closed business in the middle of the night, parking, and shutting off his vehicle's lights.  The court further found that the officer's investigation of the back of the drug store and observation of the vehicle with no sign of an occupant

substantiated his stated concern.  Lastly, the court found that the subsequent observation of Gerry in the vehicle justified a brief inquiry with Gerry.

[¶9]  On January 12, 2016, Gerry entered a conditional plea of guilty to the charge of operating under the influence.  *See* M.R.U. Crim. P. 11(a)(2).  The court accepted the conditional guilty plea, and Gerry filed a timely notice of appeal.

## II.  LEGAL ANALYSIS

[¶10]  Gerry argues that his detention was not supported by a reasonable articulable suspicion, and therefore constituted an unreasonable seizure under the Fourth Amendment.[1]  He argues that the officer could not have harbored a reasonable articulable suspicion once he realized that no burglary had occurred, and that the trial court relied on precedent that was inapplicable to the facts in the present case.

[¶11]  When reviewing a trial court's denial of a motion to suppress, we review the findings of fact by the trial court for clear error and review its conclusions of law de novo.  *Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 94.  We

---

[1] Gerry contends that he was seized when the officer "flew out of [his] car to confront [him], pinning [his] car in its parking spot."  Although it does not appear that the officer activated his blue lights, or that Gerry's car would not have been restricted from being driven forward, the State concedes that Gerry was detained for Fourth Amendment purposes.

"will uphold the denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *Id.*

[¶12]  The protections of the Fourth Amendment are implicated when "[a]n encounter between a member of law enforcement and a citizen . . . constitutes a seizure of . . . the citizen." *State v. Gulick*, 2000 ME 170, ¶ 10, 759 A.2d 1085.  A law enforcement officer can permissibly detain a citizen when "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Dulac*, 600 A.2d 1121, 1122 (Me. 1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *see also State v. LaPlante*, 2011 ME 85, ¶ 8, 26 A.3d 337 ("In almost all circumstances, a warrantless seizure is unreasonable in the absence of an objectively reasonable, articulable suspicion that criminal conduct has taken place, is occurring, or will imminently occur.").  When the initial justification for a stop has evaporated, a law enforcement officer is not precluded from making further investigation based on facts obtained though the initial lawful contact.  *See State v. Huether*, 2000 ME 59, ¶¶ 6-8, 748 A.2d 993.

[¶13]   Gerry argues that the officer could not have harbored a reasonable articulable suspicion that a burglary was taking place or about to take place once he found Gerry asleep in his car.  The officer, however, never

stated that he found Gerry sleeping, only that he did not see anyone in the car until he used his spotlight to illuminate the vehicle and then saw Gerry's head pop up from a reclined seat. As this occurred in the course of legitimately investigating whether a burglary may be occurring or was about to occur, asking Gerry what he was doing and if he was "all right" was a minimal intrusion on his Fourth Amendment rights. *See State v. Hill*, 606 A.2d 793, 795 (Me. 1992) (noting that a request to see a drivers license was a "minimal further intrusion" and did not require a reasonable articulable suspicion, so long as the initial stop was supported by a reasonable articulable suspicion).

[¶14] In the circumstances of this case, the officer's questions were appropriate, even if the officer no longer suspected a burglary might be taking place. *Hill*, 606 A.2d at 794-95 (observing that although the justification for the initial detention had evaporated, an officer was justified in prolonging a detention in a way that created only a "minimal further intrusion" into the detained person's liberty interests, because there was a "significant State interest"; *see also State v. Gulick*, 2000 ME 170, ¶¶ 19-20, 759 A.2d 1085; *cf. Rodriguez v. United States*, 575 U.S. ---, 135 S. Ct. 1609, 1614-15 (2015) (stating that "a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a warning

ticket," but that the "mission" of a traffic stop includes making "ordinary inquiries incident to [the traffic] stop").

[¶15] Thinking that a burglary may be occurring or was about to occur, the officer investigated the back of the store, and proceeded around to the parked car, which appeared empty until illuminated.[2] Once the officer illuminated the car, Gerry popped up in his seat, and the officer engaged him. At that point the officer noticed the scent of alcohol on Gerry—a fact discovered as a result of the initial lawful contact—and he was justified in investigating and detaining Gerry further.

[¶16] The trial court found that the facts from *State v. Gulick*, 2000 ME 170, 759 A.2d 1085, were "very similar" to the facts of this case, and relied on that opinion in denying Gerry's motion to suppress. Gerry argues that unlike *Gulick,* the officer here had no concern for safety, and further contends that the opinion says nothing about a suspicion of wrongdoing being sufficient grounds for a reasonable articulable suspicion.

---

[2] Although Gerry asserts that the officer's suspicion was nothing more than a "hunch," the trial court did not clearly err in finding that the officer had a reasonable articulable suspicion that a burglary may be occurring or was about to occur, because the officer testified to knowledge of other burglaries in the area, the time of night, the location of the vehicle, and the manner in which it was parked. *See State v. Sylvain*, 2003 ME 5, ¶ 8, 814 A.2d 984 ("Since the motion court has had the opportunity to hear the witnesses and assess their credibility, we afford the court's findings concerning historical facts considerable deference. . . . [O]nly if the findings are clearly erroneous will they be set aside.").

8

[¶17]  Although there may have been no safety concern here, the assertion about wrongdoing ignores what may have been the officer's duty to at least check on any vehicle found in similar circumstances in the early morning hours.  As we stated in *Gulick,* "[h]aving observed the car pull into the parking lot of a closed emergency medical care facility at almost three o'clock in the morning, any prudent officer would have been justified in assuring that the occupants did not have a medical or other emergency *or that illegal activity was not afoot."  Gulick,* 2000 ME 170, ¶ 18, 759 A.2d 1085 (emphasis added) (citation omitted).  We further stated that under those circumstances, an officer's failure to "investigate . . . [the defendant's] presence there, and obtain identification, would have constituted a serious error in judgment."  *Id.* We ultimately held that "a detention related to a request . . . that the motor vehicle operator demonstrate that the operator is licensed is not an unreasonable intrusion *when the officer's initial contact with the operator is based on reasonable and articulable facts* of a concern for safety or wrongdoing, whether or not the initial contact itself constituted a seizure." *Id.* ¶ 21 (emphasis in original).

[¶18]  Given that the drug store had been closed for several hours, and suspecting that a burglary may be afoot, the officer was justified in briefly

detaining Gerry to ask if he was all right and to inquire as to his purpose in being there.[3]  The court was correct in determining that *Gulick* controlled.[4]

[¶19]  Viewing the findings of fact in the light most favorable to the trial court's order, there is sufficient evidence to conclude that the officer had a reasonable, articulable suspicion of wrongdoing to warrant the brief detention of Gerry. The officer's subsequent observation and discovery of Gerry's intoxication therefore resulted from a reasonable, articulable suspicion of other criminal conduct.  The court's factual findings are not clearly erroneous, and its legal conclusions are consistent with our law.

The entry is:

Judgment affirmed.

---

[3]  In *Gulick*, we noted that the officer did not choose to engage in a seizure or stop, but having observed the lone vehicle at a closed medical facility at three in the morning "would have been justified in engaging in a seizure, or a 'stop' on these facts."  *State v. Gulick*, 2000 ME 170, ¶ 17, 759 A.2d 1085.

[4]  Applying *Gulick* in this manner does not, as Gerry contends, "swallow the rule, allowing police to seize and search anyone parked in a public place . . .  at nighttime," because law enforcement officers must still harbor a reasonable, articulable suspicion to justify a detention.

**On the briefs:**

Rory A. McNamara, Esq., Drake Law, LLC, Lebanon, for appellant Adam D. Gerry

William B. Entwisle, Asst. Dist. Atty., Prosecutorial District VI, Belfast, for appellee State of Maine

Waldo County Unified Criminal Docket docket number CR-2015-77
FOR CLERK REFERENCE ONLY