MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 16
Docket:      Fra-17-212
Argued:      December 14, 2017
Decided:     January 25, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ARDER PRINKLETON

ALEXANDER, J.

[¶1]   Arder Prinkleton appeals from the judgment of the Unified Criminal Docket (Franklin County, *Mullen, J.*) finding him guilty of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2017), and ordering a criminal forfeiture, 15 M.R.S. § 5826 (2017), following a conditional guilty plea, *see* M.R.U. Crim. P. 11(a)(2).  On appeal, Prinkleton argues that the motion court (*Stokes, J.*) erred by applying the inevitable discovery doctrine to deny his motion to suppress evidence of drugs found on his person before the issuance of a search warrant.  We affirm the judgment.

I.  CASE HISTORY

[¶2]  In its order denying the motion to suppress, the court found the following facts, which are supported by the record and are viewed in the light

2

most favorable to the motion court's judgment. *See State v. Gerry*, 2016 ME 163, ¶ 2, 150 A.3d 810.

[¶3] On March 15, 2016, an agent of the Maine Drug Enforcement Agency (MDEA) spoke to an anonymous caller who provided information concerning a man from New York known as "H" who allegedly sold large quantities of cocaine out of the apartment of Crystal Taylor located at a specific address in Wilton. The caller stated that "H" comes to Wilton for a few weeks at a time and sells half gram quantities of cocaine for $100. The caller reported that a friend had purchased cocaine from "H" the previous weekend.

[¶4] The next day, law enforcement officers from the MDEA and the Wilton Police Department placed Taylor's apartment under surveillance. During the surveillance, officers saw a man leave the apartment and get into a car. A Wilton police officer stopped the car for speeding approximately one and a half miles away.

[¶5] One MDEA agent went to the location of the vehicle stop while another officer continued to watch Taylor's apartment from outside the residence. The MDEA agent spoke with the operator of the vehicle. The vehicle operator consented to a search of his vehicle, which resulted in the

discovery of two small plastic bags inside a CD holder located in the glove box. The contents of the bags field-tested positive for cocaine.

[¶6]  The vehicle operator admitted that he was coming from Taylor's apartment.  He told the officers that he communicates with Taylor by texting the message: "Are you playing cards?"  If Taylor responds affirmatively, then it means that "they" have "product."  The vehicle operator stated that, earlier that day, he entered the apartment and went to the kitchen, where he saw a man with whom he was familiar sitting at a table on which there were two bags of cocaine.  The vehicle operator placed $100 on the table, at which point Taylor nodded.  The vehicle operator then took the cocaine and left the apartment.  He told the officers that he had purchased cocaine at Taylor's apartment on previous occasions and that he had seen the same man on two of those occasions.  The vehicle operator insisted that he did not know the man's name.

[¶7]  During the vehicle stop, the officers became concerned that Taylor and "H" could be alerted to their investigation because the stop was occurring on a busy road in a small town and because the vehicle operator's cell phone was continuously ringing while the officers were speaking with him.  The officers had taken the phone from the vehicle operator and did not allow him

4

to answer it. After discussing the situation with their supervisors and an assistant attorney general, the officers decided to secure Taylor's apartment before applying for a search warrant.

[¶8] An MDEA agent and another officer travelled to Taylor's apartment and knocked on the door. When Taylor opened the door, the officers identified themselves and asked if anyone else was inside. Taylor pointed and said "him." The officers informed Taylor that they were going to "secure" the apartment.

[¶9] The MDEA agent entered the apartment and walked into the kitchen, where he saw a man, later identified as Prinkleton, sitting at the table. The agent told the man that he needed to do a "pat down" of him for officer safety purposes. The man was "very cooperative" and allowed the agent to proceed. During the pat down, the agent felt a large ball in one of the man's pockets. The agent believed, based on his training and experience, that the object was a drug and removed it from the man's pocket. The object was a ball of small plastic baggies that appeared to contain cocaine placed inside of a larger plastic bag.[1]

---

[1] According to the evidence log, $1,083 in cash was also found in Prinkleton's pocket, which the motion court "assume[d] . . . was found and seized during the pat down of [Prinkleton]."

[¶10]  The man was then identified as Prinkleton, who was from New York and for whom there was an outstanding arrest warrant.  Taylor was also patted down by officers, but no contraband was found on her.  Taylor and Prinkleton were later transported to the Franklin County Jail.  No search of the apartment was conducted at that time.  An MDEA agent then applied for a search warrant, which the MDEA agent testified took a "couple of hours."  A justice of the peace issued a search warrant for Taylor's apartment at 8:05 p.m.

[¶11]  Prinkleton was charged by complaint with unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A).  He was indicted that May on two counts of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A), and criminal forfeiture, 15 M.R.S. § 5826.[2]

[¶12]  Prinkleton filed a motion to suppress evidence of the drugs found on his person, arguing that there were no exigent circumstances justifying the officers' warrantless entry into the apartment and that the drugs would not have been inevitably discovered through any lawful means.[3]  After a

---

[2]  The second count of unlawful trafficking in scheduled drugs alleged in the indictment incorrectly cited to 17-A M.R.S. § 1003(1-A)(A) (2017).  The State dismissed this count pursuant to the plea agreement.

[3]  At oral argument, counsel for the parties affirmatively reported that the State had conceded that Prinkleton had a connection with Taylor's apartment that was sufficient to provide him with standing to challenge the entry into the apartment.

6

testimonial hearing in December 2016, the court entered an order that denied Prinkleton's motion.

[¶13]  The motion court found that the officers possessed "abundant probable cause" to believe that a man from New York who went by the moniker "H" was trafficking cocaine out of Taylor's apartment based on the anonymous tip from the citizen informant and the information provided by the operator of the stopped vehicle.  The court observed that the officers' actions "to shut down the operation without delay" were not unreasonable where the police had probable cause to believe that (1) large quantities of cocaine had been imported into the Town of Wilton; (2) the drug importer was using a local resident's apartment to traffick in that drug; (3) an illicit drug transaction just occurred minutes earlier; and (4) the drug trafficking was ongoing and continuous.

[¶14]  Despite these observations, the court found that the State had not established that exigent circumstances existed at the time of the warrantless entry.[4]  Although the court found that the warrantless entry was not justified

---

[4]    While the court concluded that the warrantless entry was not justified by exigent circumstances, the court observed that, upon entering the apartment, the police appropriately limited their search to patting down Prinkleton and Taylor to assure officer safety and to prevent the destruction of evidence and did not conduct a warrantless search of the apartment.

by exigent circumstances, the court had "no difficulty" concluding that it was highly likely that the officers inevitably would have discovered the drugs.[5]

[¶15] On April 19, 2017, Prinkleton entered a conditional guilty plea to one count of unlawful trafficking in scheduled drugs and criminal forfeiture. *See* M.R.U. Crim. P. 11(a)(2). He was sentenced to five years' imprisonment with all but twenty-seven months suspended and three years' probation. The court also ordered Prinkleton to forfeit $6,083, to pay $400 in fines, and to pay $120 in restitution to the MDEA. Prinkleton timely appealed.

## II. LEGAL ANALYSIS

[¶16] Prinkleton argues that the motion court erred in two ways when it applied the inevitable discovery doctrine to deny his motion to suppress. First, he challenges the court's factual finding that the police inevitably would have discovered the drugs on Prinkleton's person absent the warrantless entry into the apartment. Second, he contends that application of the inevitable discovery doctrine under these circumstances provides an incentive for police to make warrantless entries into residences whenever they have probable cause to believe that drug trafficking is occurring inside.[6]

---

[5] The State did not assert that Prinkleton had no expectation of privacy in Taylor's apartment.

[6] The State contends that we could affirm the motion court's order by concluding that the officers' entry into the apartment was lawful pursuant to the exceptions to the warrant

8

## A. Standard of Review

[¶17]   When reviewing the denial of a motion to suppress, we review the motion court's factual findings for clear error and its legal conclusions de novo.  *State v. Nadeau*, 2010 ME 71, ¶ 15, 1 A.3d 445.  A finding of fact is clearly erroneous only if the record lacks any competent evidence to support the finding.  *State v. Harriman*, 467 A.2d 745, 747 (Me. 1983).  Because neither party moved for additional findings, *see* M.R.U. Crim. P. 41A(d), we will infer that the court found all the facts necessary to support its order if those inferred findings are supported by competent evidence in the record, and we will consider the evidence, and reasonable inferences that may be drawn from the evidence, in the light most favorable to the motion court's order.  *State v. Cooper*, 2017 ME 4, ¶ 2, 153 A.3d 759.  We will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the court's decision.  *State v. Lagasse*, 2016 ME 158, ¶ 11, 149 A.3d 1153.

## B. Inevitable Discovery Doctrine

[¶18]   "The inevitable discovery exception to the exclusionary rule permits the use of evidence that has been obtained in violation of the Fourth

---

requirement for exigent circumstances or temporary seizure of premises.   *See* 15 M.R.S. § 2115-A(3) (2017); *State v. Rabon*, 2007 ME 113, ¶ 12 n.4, 930 A.2d 268.  Because we affirm the finding that the police inevitably would have discovered the drugs found on Prinkleton's person, we do not reach the State's alternative argument.

Amendment to the United States Constitution and article I, section 5 of the Maine Constitution when that evidence inevitably would have been discovered by lawful means." *State v. Rabon*, 2007 ME 113, ¶ 19, 930 A.2d 268. The State must establish "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *State v. Storer*, 583 A.2d 1016, 1020 (Me. 1990) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "The prosecution may not rely on speculation but rather must meet this burden of proof based on demonstrated historical facts capable of ready verification or impeachment." *Nadeau*, 2010 ME 71, ¶ 36, 1 A.3d 445 (quoting *United States v. Ford*, 22 F.3d 374, 377 (1st Cir. 1994).

[¶19]  We require proof of three elements before determining that evidence inevitably would have been lawfully discovered: (1) the evidence could have been gained lawfully from information that is truly independent from the warrantless search, (2) the evidence inevitably would have been discovered by such lawful means, and (3) the application of the inevitable discovery exception neither provides an incentive for police misconduct nor significantly weakens Fourth Amendment protections. *Nadeau*, 2010 ME 71, ¶ 38, 1 A.3d 445. Prinkleton does not challenge the court's finding that the

State established the first element—that the evidence could have been gained lawfully from information truly independent from the warrantless search— and that finding is supported by the record.

1. The Evidence Inevitably Would Have Been Discovered by Lawful Means

[¶20] Regarding the second element, Prinkleton challenges two of the court's specific factual findings—that the issuance of the search warrant took three to four hours and that the police would have continued to monitor Taylor's apartment while they made efforts to obtain a search warrant—as well as the court's ultimate finding that the police inevitably would have discovered the drugs if they had not entered the apartment until after obtaining a search warrant. Contrary to Prinkleton's contentions, the court's findings are supported by competent evidence in the record.

[¶21] In its order, the motion court noted that the record was "unclear" regarding the exact timing of certain events and that it assumed that the process of applying for the search warrant took approximately three to four hours. The court's finding was based on the MDEA agent's testimony that the process took "a couple hours." Although there may be some evidence in the record that supports Prinkleton's alternative and protracted timeline, the court's finding is not clearly erroneous, and we do not disturb it on appeal.

[¶22] The court's finding that the police would have continued to monitor the apartment is also supported by competent record evidence and by reasonable inferences drawn from the record. The MDEA agent testified that an officer continuously monitored Taylor's apartment from outside the residence including while other officers engaged in the vehicle stop and even after agents secured Taylor's residence. Furthermore, the court could have inferred that the police would have continued their surveillance based on the scope of the operation, which included marked and unmarked vehicles as well as uniformed and plain-clothed officers from multiple agencies, and the swiftness of the investigation.

[¶23] Within twenty-four hours after receiving the anonymous tip from the citizen informant, the police set up surveillance of Taylor's apartment; stopped a vehicle leaving that address; discovered items that field-tested positive for cocaine, thereby corroborating the tip; immediately secured the apartment; and applied for a search warrant. That the police promptly applied for a search warrant confirms the court's determination that this was not the type of operation where the police would halt the surveillance while they continued their investigation.

[¶24]  The court's ultimate finding is supported by ample evidence in the record.  First, there is no evidence that Prinkleton or Taylor knew that the police were "closing in" on them, which might have prompted them to destroy the drugs found on Prinkleton's person.  The MDEA agent testified that the police surveillance was inconspicuous so that Prinkleton and Taylor would not be alerted to their presence, and there were no other "comings and goings" after the individual whose vehicle was stopped left the apartment.

[¶25]  Second, there was a close temporal relationship among the drug transaction at Taylor's apartment, the securing of the apartment, and the application for and obtaining of the search warrant.  In fact, Prinkleton was still seated at the kitchen table when the police arrived to secure the apartment approximately forty-five minutes after the vehicle operator purchased cocaine from him.

[¶26]  Third, based on reasonable inferences drawn from the record, it is highly probable that the police would have stopped Prinkleton had he attempted to leave the apartment with the drugs.  At that time, the police would have identified Prinkleton and arrested him based on the outstanding arrest warrant or would have made a warrantless arrest pursuant to 17-A M.R.S. § 15(1)(A)(2) (2017) for unlawful trafficking in scheduled drugs.

Under either circumstance, the police would have searched Prinkleton incident to arrest and discovered the drugs in his pocket.

[¶27] Finally, and perhaps most importantly, the police did obtain a warrant to search Taylor's apartment, and it was issued relatively soon after the police developed probable cause to believe that there were drugs located in Taylor's apartment.

2. The Application of the Inevitable Discovery Doctrine Neither Provides an Incentive for Police Misconduct Nor Significantly Weakens Fourth Amendment Protections

[¶28] Applying the inevitable discovery doctrine to the facts presented here does not provide an incentive for police to make warrantless entries into any residence when they have probable cause to believe that there is drug-related activity therein. The record establishes that, after stopping the vehicle and corroborating the anonymous tip, the police intended to obtain a search warrant, and that, after consulting with their supervisors and an assistant attorney general, they decided to secure Taylor's apartment before the search warrant was issued.

[¶29] The careful and deliberate actions that the motion court found the police had taken in this case support the motion court's conclusion that the officers had a good faith belief that they had probable cause that there was

ongoing criminal activity in Taylor's apartment and that there were exigent circumstances justifying their entry to secure the apartment. There is no indication in the record that the police were attempting to subvert the Fourth Amendment warrant requirement. Furthermore, after entering the apartment, the police limited the scope of their search to patting down the occupants of the apartment for officer safety purposes. They did not search the residence until the search warrant was issued.

[¶30] Because the court did not err by finding that the police inevitably would have discovered the drug evidence by lawful means, and because, under the circumstances presented here, the application of the inevitable discovery doctrine does not create an incentive for police misconduct and does not significantly weaken Fourth Amendment protections, the motion court did not err in denying the motion to suppress.

The entry is:

Judgment affirmed.

---

Luann L. Calcagni, Esq. (orally), Augusta, for appellant Arder Prinkleton

Janet T. Mills, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine