**STATE of Maine**

v.

**Vaughn Henri LeBLANC.**

Supreme Judicial Court of Maine.

Nov. 20, 1975.

---

Henry N. Berry III, Dist. Atty., Portland, Peter G. Ballou, Asst. Dist. Atty., Er-nest Manderson, Law Student, for plaintiff.

Tom Brand, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

On May 14, 1973, the Portland Police received a telephone call from a woman who would not identify herself but stated that there were "strange goings on" at a certain apartment on 658 Congress Street and that the owner was not at home. Approximately five minutes after receiving this cryptic piece of intelligence, four plainclothes detectives arrived at the apartment. They noted that both the door lock and door frame were broken, and that splintered wood covered the floor near the door. The apartment had been visited by one of the detectives a week before at which time the door had been intact. The door was now held ajar three or four inches by a chain lock fastened to the inside of the door and frame. Peering out from behind the door was the defendant, whom the detective did not recognize as one of those present during his previous visit. None of the detectives knew, however, whether the occupancy of the apartment had changed or when the door had been damaged during the interim.

The police ordered the defendant to open the door and when he did so they entered the apartment and stood in a combination bedroom-livingroom. The room appeared to the detectives to have been "ransacked"; the bed had been torn back, all the bureau drawers were open, and on the floor near the door were several laundry bags, in which the officers could see clothing and record albums.

Detective Conley asked the defendant for identification. The defendant pro-

duced a Social Security card that identified him as Vaughn LeBlanc. When asked for his address, the defendant replied indistinctly saying what Detective Conley understood as "Parris Street", but refused to give the street number. The defendant stated that he was in the apartment with the permission of the tenant and named a person believed by Detective Conley to be the tenant.

While Detective Conley questioned the defendant and the other detectives stood by, Detective McDowell entered a small adjacent alcove approximately eight to ten feet from the defendant and Detective Conley. Looking for a means to identify the defendant, Detective McDowell picked up and searched a jacket that was lying on a couch in the adjacent alcove. In a pocket he found a knife with an open blade and an open tobacco pouch in which Detective McDowell could see some clear plastic pill bottles containing what he thought were cocaine and hashish. Detective McDowell held up the jacket and asked the defendant if he knew what it was. When the defendant replied that it was his jacket, he was asked if he knew what he was saying, and when he replied in the affirmative he was read the *Miranda* warning and placed under arrest.

The defendant was convicted of possession of cocaine in Cumberland County Superior Court on October 10, 1974. He appeals to this Court, raising the sole issue of whether his motion to suppress the cocaine was properly denied.

The defendant contends that the search of the jacket was constitutional only if it conformed to the principles established by *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which recognizes an exception to the warrant requirement of the fourth amendment when a search is conducted incident to a lawful arrest. The defendant argues that the search must fail under *Chimel* for two reasons: the search incident to the arrest preceded the arrest; and the scope of the

search was not limited to the area under the immediate control of the defendant and therefore exceeded the limits circumscribed by *Chimel*. He claims that any evidence obtained as a result of the search violated his fourth amendment rights and should have been excluded at trial. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). We agree with the defendant that the principles of *Chimel* control this case but do not sustain the points he has raised and therefore deny the appeal.

*The Search May Precede a Lawful Arrest*

*Chimel* permits, incident to a lawful arrest, a warrantless search of the arrestee's person and the area under his immediate control. Putting aside for one moment the question of whether the scope of the search was properly limited, it is clear that a search substantially contemporaneous with arrest may precede the arrest if the police have probable cause to arrest at the outset of the search. *State v. Burns*, Me., 306 A.2d 8 (1973); *State v. LeClair*, Me., 304 A.2d 385 (1973); *accord, United States v. Jenkins*, 496 F.2d 57 (2d Cir. 1974); *Holt v. Simpson*, 340 F.2d 853 (7th Cir. 1965). We do not doubt that the search was sufficiently contemporaneous with the arrest that both together constituted a single incident. The only question before us as to this issue is whether the police had probable cause to arrest the defendant when they searched the jacket.

The existence or non-existence of probable cause to arrest will in most cases be determined by the particular facts and circumstances under which the arrest occurred. This Court has articulated the standard for probable cause as follows:

"Probable cause exists where the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent and cautious man in believing that the arrested

person had committed or was committing the felonious offense." *State v. Smith,* Me., 277 A.2d 481, 488 (1971).

Although the circumstances known or believed to exist by the police officers must give rise to more than a mere suspicion, they need not be sufficient to establish guilt. *State v. Littlefield,* 161 Me. 415, 213 A.2d 431 (1965).

Applying this standard to the present case, we conclude that the police had probable cause to believe that the defendant was in the process of committing a breaking and entering and larceny, a felony under 17 M.R.S.A. 2103.

The anonymous phone call was not by itself adequate to supply probable cause for arrest. *State v. Hawkins,* Me., 261 A. 2d 255 (1970). Yet coupled with the officers' personal observations, the call became part of the evidentiary chain establishing probable cause. *See State v. Mimmovich,* Me., 284 A.2d 282 (1971). Detective Conley had been in the apartment during the week before the incident leading to the defendant's arrest, was familiar with the occupants and did not recognize the defendant. The door to the apartment and the locks on it were so extensively damaged that Detective Conley concluded that the door had been "kicked in". This door had been intact during the previous visit and the splintered wood on the floor suggested that the damage had been recently inflicted. The disarray in the apartment itself could only corroborate the officers' suspicions. Laundry bags stuffed with records and clothing were on the floor near the door. The defendant refused to give his address, a fact of obvious interest to police questioning a possible burglary suspect. These facts were known to the police before the search in question took place and were "sufficient to warrant a prudent and cautious man" in believing that the defendant had been interrupted in the midst of a break.

This is not a situation where the search was undertaken before the police had probable cause to arrest their suspect. The police may not, of course, conduct a warrantless search with the object of discovering enough evidence to supply probable cause. Here, the probable cause to arrest existed before the search took place. If the search was otherwise valid, the fact that the search closely preceded the arrest —in reverse of the usual sequence—is of no constitutional consequence.

*The Scope of the Search*

Once the police arrest (or have probable cause to arrest, under these facts) they do not need a warrant to search for weapons or evidence of the crime that might be readily concealed or destroyed. *Chimel v. California, supra; State v. Heald,* Me., 314 A.2d 820 (1973). This warrantless search must be confined to the defendant's person or "the area from which [he] might obtain weapons or evidentiary items." *Chimel v. California, supra,* 395 U.S. at 766, 89 S.Ct. at 2041; *State v. York,* Me., 324 A.2d 758 (1974). A search incident to a lawful arrest must be limited to the area where the arrest occurred; it may not be conducted somewhere "remote in time and place from the arrest." *Chimel v. California, supra,* 395 U.S. at 764, 89 S.Ct. at 2040; *State v. York,* supra. Only these temporal and geographical limitations satisfy the fourth amendment objective of preventing the police from "rummaging at will" among the defendant's effects. *Chimel v. California, supra,* 395 U.S. at 764, 89 S.Ct. 2034; *See State v. Richards,* Me., 296 A.2d 129 (1972).

Detective McDowell testified that he examined the coat for the purpose of discovering some clue as to the defendant's identification. As previously noted, the police had probable cause to believe that the defendant had been interrupted in the process of committing a crime. The police had ample justification to place the de-

fendant under arrest for burglary at that point and it is most unlikely that they would have permitted him to depart if he had attempted to do so. Their hesitation appears to have been due to an abundance of caution in the interests of seeking some evidence of identification that might explain the presence in the apartment of this uncooperative and apparently guilty young man.

Officer McDowell explained his examination of the jacket as being for the purpose of seeking identification "primarily" because of his belief that the defendant "had no business there." Articulated differently, his purpose would seem to have been that of seeking evidence which could be used to prove whether the defendant was a burglar about to leave a looted apartment, as the officer believed, or an innocent occupant just moving in.[1]

We have said:

"In order to be sustained as a valid search incident to a lawful arrest, the search, however, must be reasonable; it must be confined to those areas into which an arrestee might reach to obtain weapons or to destroy or conceal evidence." *State v. York*, 324 A.2d at 763.

■ Regardless of this officer's subjective purpose, a reasonable and prudent police officer in these circumstances would have been justified in searching the area within which this still unrestrained defendant might obtain a weapon or destroy evidence of the crime of which the police had probable cause to believe him guilty. However this officer articulated his purpose, he was looking in the limited area in which he was, under the circumstances, entitled to look. He found a weapon and also contraband. Although the contraband was not connected with the

apparent break into the apartment, the fourth amendment is not offended merely because of the fortuitous discovery of evidence unrelated to the circumstances justifying the search. *Abel v. United States,* 362 U.S. 217, 238, 80 S.Ct. 683, 697, 4 L. Ed.2d 668, 686 (1960); *cf. Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967).

The proper scope of a search incident to arrest extends to the area within the suspect's immediate physical control, the area from which he or she might gain possession of a weapon or disposable evidence. *Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. 2034. This area within which a search is permitted depends upon the circumstances of each case and does not, therefore, admit of precise delineation. It has been variously described as the suspect's "leaping range" (*Application of Kiser,* 419 F.2d 1134, 1137 (8th Cir. 1969)), or the area reasonably within the defendant's "lunge, reach or grasp" (*Howell v. State,* 271 Md. 378, 318 A.2d 189, 192 (1974)). This Court has held a search valid under the *Chimel* doctrine if it encompasses an area within the "conceivable control" of the suspect. *State v. York, supra,* 324 A. 2d at 764; *State v. Heald, supra,* 314 A.2d at 827.

■ During the time in question the defendant was standing 8 to 10 feet from the jacket which was in full view of the defendant and the investigating officers. The defendant was not handcuffed, nor was the presence of the police officers a sufficiently effective restraint to render the immediate surrounding area beyond his control. *United States v. Patterson,* 447 F.2d 424 (10th Cir. 1971). The police could reasonably have interpreted defendant's refusal to cooperate as evidence of his awareness that enough suspicion had

1. This case is easily distinguishable from our decision in *State v. Richards,* Me., 296 A.2d 129 (1972), in which we ruled inadmissible certain contraband obtained while searching a jacket in a wrecked automobile for identification of a hospitalized and seriously injured victim of the accident, in carrying out what the police considered to be their civil responsibilities.

focused on him to motivate him to destroy incriminating evidence. We cannot say that the defendant could not have gotten access to the jacket if he so desired and the jacket was not therefore in an area beyond his conceivable control. *See United States v. Wysocki,* 457 F.2d 1155 (5th Cir. 1972); *United States v. Patterson, supra.*

The investigating officer did not conduct a general search of the room; he went directly to the jacket with the object of discovering information relevant to the defendant's apparent status as a burglar. The officer's action was not only justified at its inception, it was reasonably related in scope to the circumstances which permitted the initial interference with the defendant's rights. *See Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). We conclude that the search and seizure of the jacket was not contrary to *Chimel.* The evidence was legally seized and its admission at trial was proper.

The entry will be:

Appeal denied.

All Justices concurring.