STATE OF MAINE  
CUMBERLAND, ss.

UNFIED CRIMINAL COURT  
PORTLAND  
Docket No. CDCR-16-287

STATE )
)
)
v. )
)
)
REBECCA HASSETT )
)
Defendant )

ORDER ON MOTION TO SUPPRESS

Pending before the court is Defendant's motion to suppress evidence found in her pocket as well as incriminating statements Defendant made before being apprised of her *Miranda* rights. Defendant's motion was filed on June 21, 2016 and the court heard oral argument and testimony on August 11, 2016. Assistant Attorney General LeaAnne Sutton appeared and argued on behalf of the State, and Attorney Charlene Hoffman appeared and argued on behalf of Defendant. As agreed by the parties, the court viewed a recording of the police encounter with Defendant in chambers after the conclusion of the hearing. Having considered the evidence and argument in light of Maine law, the court finds and concludes as follows:

While on patrol on January 13, 2016, Officer Sean Hurley of the Portland Police Department came upon a car stopped at the intersection of Elm Street and Cumberland Avenue in Portland. The car was stopped in the left lane with its hazards on and its hood up. As Officer Hurley approached, he observed that the license plate matched that of a vehicle implicated in a recent stabbing. Officer Hurley observed a woman standing outside the vehicle behind its opened hood and a male exiting the passenger side. The woman identified herself as Rebecca Hassett, which Officer Hurley recognized as the registered owner's name associated with the license plate alert. When Officer Hurley began a pat-down of Defendant, she tried to pull away, at which point Officer Hurley handcuffed her. Asked whether she had any needles on her, she answered that she did, in the front pocket, which she clarified by explaining that "it's in the big one, no, actually it's in this one right here, there might be two." When Defendant complained about being cold, Officer Hurley brought her to the sidewalk and responded "of course" when she asked him whether she could sit. Shortly thereafter Defendant, while off camera, is heard to exclaim "aw, don't, come on, man, don't" and Officer Hurley is heard to remark that he just found five

packets. He asks, "heroin?" and Defendant responds "yup. Does this mean I'm going to jail now?" At the suppression hearing, Officer Hurley testified he had taken Defendant to a heated entryway, that she kept trying to move around, and that she appeared to be "trying to get to her pocket," at which point he spotted and seized folding papers in a baggie with a brown substance which field tests showed to be heroin.

Defendant seeks suppression of the heroin seized from her pocket on the ground that her detention amounted to a de facto arrest for which there was no probable cause. Her motion, moreover, seeks suppression of all statements made to Officer Hurley on the ground that they were elicited during a custodial interrogation in the absence of the requisite Miranda warnings.

The First Circuit has noted that "there is no scientifically precise formula that enables courts to distinguish between valid investigatory stops and de facto arrests." *United States v. Owens*, 167 F.3d 739, 749 (1st Cir. 1999). Courts making this inquiry should examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675 (1985)).

The court finds that Officer Hurley's detention of Defendant was appropriate under the circumstances. Officer Hurley had been advised that a car registered to a Rebecca Hassett with Maine license plate 8224TM was implicated in a stabbing. The license plate was a match, and the driver identified herself as "Rebecca Hassett." Given Defendant's conduct in pulling away, coupled with Officer Hurley's reasonable concern that she might be armed, Officer Hurley's act of handcuffing Defendant did not transform Defendant's detention into a de facto arrest. *See, e.g., State v. Langlois*, 2005 ME 3, ¶ 10 (concluding that Defendant "was subjected to an investigatory detention, not an arrest, when Officer Tall ordered him at gunpoint to lie down"); *Morelli v. Webster*, 552 F.3d 12, 20 (1st Cir. 2009) (noting that in certain circumstances physical restraint "may be perfectly consistent with an investigatory stop") (citing *United States v. Kapperman*, 764 F.2d 786, 790 n. 4 (11th Cir. 1985) ("stating that 'neither handcuffing nor other restraints will automatically convert a *Terry* stop into a de facto arrest.'")). As in *Langlois*, Officer Hurley's actions here "were 'justified at their inception and reasonably related in scope

2

to the circumstances which justified the interference in the first place.'" *Id.* (internal citations omitted).

The court finds, moreover, that even assuming *arguendo* that the detention should properly be characterized as a de facto arrest by virtue of Defendant's handcuffing, Officer Hurley had probable cause to suspect that Defendant was involved in criminal activity such that no Fourth Amendment violation occurred. *See, e.g., State v. Flint*, 2011 ME 20, ¶ 12 ("The probable cause standard is flexible and based on common sense. Although requiring more than mere suspicion, probable cause can be satisfied on less than the quantum of proof necessary to establish a fact by a fair preponderance of the evidence.").

Suppression of the heroin is not warranted in any event, since pursuant to the plain view exception "objects falling in the plain view of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced in evidence." *State v. Chattley*, 390 A.2d 472, 476 (Me. 1978) (citations omitted). Officer Hurley testified that he seized the baggie after spotting it in plain view. Defendant did not refute Officer Hurley's testimony on that point, testifying simply that she "doesn't know whether he noticed the baggie or not," and that she "thought he pulled it out of my pocket." Moreover, to the extent Defendant's detention may be characterized as a de facto arrest, seizure of the baggie from Defendant's pocket was permissible as a search incident to arrest. *See, e.g., State v. Le Blanc*, 347 A.2d 590, 593 (Me. 1975) ("a search substantially contemporaneous with arrest may precede the arrest if the police have probable cause to arrest at the outset of the search"); *id.* at 595 ("The proper scope of a search incident to arrest extends to the area within the suspect's immediate physical control, the area from which he or she might gain possession of a weapon or disposable evidence").

Accordingly, because seizure of the heroin did not violate Defendant's constitutional rights, Defendant's motion to suppress evidence of the heroin seized is DENIED.

Defendant's motion further seeks suppression of statements Defendant made prior to the administration of *Miranda* warnings. The question of whether Defendant's *Miranda* rights were violated turns on whether the statements sought to be suppressed[1] were elicited while Defendant was subject to "interrogation" while "in custody." It is well-established that "[a] suspect who is not formally arrested is subjected to a custodial interrogation if the suspect's freedom of

---

[1] Defendant's motion does not identify any particular statements she seeks to have suppressed, but rather asks that "any and all statements made by her to the police" be excluded from trial.

3

movement has been restrained 'to the degree associated with a formal arrest." *See, e.g., State v. Lockhart*, 2003 ME 108, ¶ 17 (citation omitted). Whether an individual is "in custody" depends on "whether a reasonable person, standing in the defendant's shoes, would have felt he or she was not at liberty to terminate the interrogation and leave." *State v. Hassan*, 2007 ME 77, ¶ 14. The court finds that a reasonable person, standing in Defendant's shoes, would not have felt free to leave. Defendant was physically restrained by virtue of the handcuffs, and her request to enter a building for warmth was denied. While some of Officer Hurley's questions were encompassed within the administrative and public safety exceptions to *Miranda, see, e.g., Lockhart*, 2003 ME 108, ¶ 18, his question as to whether the baggie contained heroin was "designed to elicit an incriminating response" such that it constitutes "interrogation" for purposes of *Miranda. See, e.g., Hassan*, 2007 ME 77, ¶ 13 (citing *Rhode Island v. Innis*, 446 U.S. 291 (1980)).

Accordingly, it is hereby ORDERED that Defendant's Motion to Suppress is hereby DENIED such that the evidence of heroin seized from Defendant may be admitted at trial. Defendant's Motion to Suppress is GRANTED such that Defendant's affirmative response to Officer Hurley's question asking whether the baggie contained heroin is hereby suppressed, and is DENIED in all other respects.

DATED: 23 Aug 16

Jed French
Judge, Unified Criminal Court

4