MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 129
Docket:       And-17-534
Argued:       July 19, 2018
Decided:      August 30, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, GORMAN, HUMPHREY, JJ.
Concurrence/
    Dissent:  HJELM, MEAD, and JABAR, JJ.

STATE OF MAINE

v.

DONNA PAGNANI


ALEXANDER, J.

[¶1]  The State appeals from an order of the trial court (Androscoggin County, *MG Kennedy, J.*) suppressing evidence seized pursuant to a warrantless search of Donna Pagnani's jacket and vehicle after finding that the searches of those items and the seizure of the evidence was not supported by probable cause and was in violation of Pagnani's Fourth Amendment rights.[1]  The State contends that the search of Pagnani's jacket was a lawful search incident to her arrest and that the drug evidence discovered in the jacket supported the subsequent search for the illegal drugs that were discovered in Pagnani's

---

[1]  The Fourth Amendment of the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

vehicle. We vacate the suppression order as to the evidence found in Pagnani's jacket.[2] We affirm the suppression order as to the evidence found in Pagnani's vehicle.

## I. PROCEDURAL HISTORY AND FACTS

[¶2] In March 2017, Donna Pagnani was indicted by the Androscoggin County grand jury and charged with unlawful furnishing of scheduled drugs, Class C, 17-A M.R.S. § 1106(1-A)(A) (2017), unlawful possession of scheduled drugs, Class C, 17-A M.R.S. § 1107-A(1)(B)(1) (2017), unlawful possession of scheduled drugs, Class D, 17-A M.R.S. § 1107-A(1)(C) (2017), operating after suspension, Class E, 29-A M.R.S. § 2412-A(1-A)(D) (2017), and one count of criminal forfeiture, 15 M.R.S. § 5826 (2017).

[¶3] Pagnani moved to suppress the evidence found during a search of her jacket and her vehicle, arguing that both searches were illegal and that all evidence discovered during those searches should be suppressed.

[¶4] A suppression hearing was held on November 7, 2017. The State presented the testimony of one witness: the arresting officer. Additionally, the State entered into evidence the video captured by the camera mounted in the

---

[2] Because we conclude that the search of Pagnani's jacket was a lawful search incident to an arrest, we do not reach the State's alternative argument that the officer had probable cause to search the jacket.

officer's cruiser. On November 17, 2017, the court issued an order containing the following findings, all of which are supported by the record except where specifically noted.

[¶5]   Around noon on January 17, 2017, an Auburn police officer observed Donna Pagnani driving her vehicle away from the Androscoggin County Courthouse.  The officer was familiar with Pagnani's "extensive" criminal history and believed that her driver's license had recently been suspended.  The officer ran a license check on Pagnani but, by the time he received the results of that check—which revealed that Pagnani's driver's license was under suspension and that she had a prior conviction for operating after suspension (OAS)—Pagnani had driven away.

[¶6]  The officer decided to wait for Pagnani near the residence where he believed she lived.  After waiting for about two hours in his unmarked police car, the officer observed Pagnani driving toward her home.  He activated his blue lights and initiated a traffic stop by following Pagnani's vehicle into the driveway of her residence.  As Pagnani got out of her vehicle, the officer approached her and informed her that her license was suspended for failing to pay a fine, to which she replied that it was not.  Pagnani provided the officer

4

with her license, registration and insurance documents while trying to contact the Violations Bureau to verify that she had paid the fine.

[¶7] The officer then ran another license check and confirmed that Pagnani's license was currently suspended. While the officer and Pagnani were standing in her driveway next to her vehicle, the officer, who knew that Pagnani had a pending drug trafficking case in New Hampshire, asked her about the status of that case. Pagnani told him that the case had been dropped. The officer asked Pagnani if she had any drugs or weapons on her, to which she responded that she did not. The officer then asked Pagnani if she would consent to a search of her vehicle, and she said no. The officer then told Pagnani that she was under arrest for operating after suspension.

[¶8] Pagnani did not willingly submit to arrest. She continued to tell the officer that she had "done nothing wrong" and continued to ask for time to speak with someone at the Violations Bureau. Several times the officer told Pagnani to put the phone down, but she continued to speak with someone on her phone and started to walk away from her vehicle. The officer advised Pagnani not to move away from him, but she walked away from the officer and toward the porch of her home. Once on the porch, Pagnani removed her jacket,

placed it on the seat of a chair on the porch, and sat in the chair. Pagnani was wearing a sleeveless top. The temperature was 34 degrees.

[¶9] The officer called for backup. When the responding officers arrived, they helped place Pagnani in handcuffs and put her into the back of the arresting officer's vehicle. Pagnani asked what she was being arrested for and was told that she was being arrested for OAS.

[¶10] After Pagnani was placed in handcuffs by the responding officers, the arresting officer picked up Pagnani's jacket from the chair and searched it. Specifically, the officer testified that, as another officer "was walking Ms. Pagnani to my vehicle, I then searched the jacket that she had taken off . . . ." The video of the incident shows the officer searching Pagnani's jacket almost immediately after she was handcuffed and removed from the porch.[3] In the jacket the officer found a small loose rock, which, based on his experience, training, and education, he believed was cocaine base.

---

[3] In ruling on the motion to suppress, the trial court found that once Pagnani "was handcuffed *and secured in the vehicle*, [the officer] conducted a warrantless search of the jacket she had removed and left on the porch." (Emphasis added.) This finding, suggesting a much longer gap between Pagnani's being removed from the porch and the search of the jacket, is not supported by the evidence in the record or by any reasonable inference drawn from the record. *See State v. Sasso,* 2016 ME 95, ¶19, 143 A.3d 124 ("We consider the evidence, and reasonable inferences that may be drawn from the evidence, in the light most favorable to the trial court's judgment to determine if the evidence rationally supports the trial court's decision."); *see also State v. Cooper*, 2017 ME 4, ¶ 2, 153 A.3d 759 ("A finding of fact supporting a suppression order will not be disturbed on appeal unless clearly erroneous, that is, lacking any competent evidence in the record to support it.").

6

[¶11]  The officer then attempted to open Pagnani's car, but it was locked. The officer asked one of the responding officers if Pagnani had the keys to her car in her hand, which she did.  He advised the responding officers that he had found cocaine base in her jacket and was going to "toss the car."  The responding officers physically removed the keys from Pagnani's hands.

[¶12]  The officer then searched the vehicle and found a sandwich bag containing five smaller bags of a brown powder.  The officer believed that the substance in the bags was heroin.

[¶13]  Based on these findings, the court granted Pagnani's motion to suppress the evidence found during the search of her jacket and vehicle.  The State, with the approval of the Attorney General, filed a timely notice of appeal. *See* 15 M.R.S. § 2115-A(1), (5) (2017); M.R. App. P. 21(b).

## II.  LEGAL ANALYSIS

A.     Search of the Jacket Incident to Arrest

[¶14]  The State argues that, contrary to the court's determination, the officer's search of Pagnani's jacket was a lawful search incident to arrest because she was wearing the jacket at the time she was placed under arrest. When reviewing a ruling on a motion to suppress, we review the factual findings made by the court for clear error and we review issues of law and the

court's ultimate determination of whether the evidence should be suppressed de novo. *State v. Prinkleton*, 2018 ME 16, ¶ 17, 178 A.3d 474; *State v. Lockhart*, 2003 ME 108, ¶ 15, 830 A.2d 433.

[¶15]  The Fourth Amendment requires that all searches be reasonable. U.S. Const. amend. IV.  "Reasonableness is measured in objective terms by examining the totality of the circumstances." *State v. Sargent*, 2009 ME 125, ¶ 10, 984 A.2d 831.  Reasonableness generally requires a warrant and probable cause, but there are exceptions to that requirement, including when a search is conducted incident to a lawful arrest. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014); *see also United States v. Robinson*, 414 U. S. 218, 235-36 (1973); *State v. Foy*, 662 A.2d 238, 241 (Me. 1995).  The first question we must address, therefore, is whether the search of Pagnani's jacket was proper as a search "incident" to her arrest.  As the Supreme Court stated in *Riley*, "the extent to which officers may search property found on or near the arrestee" has been debated for nearly as long as the exception has been recognized. *Riley*, 134 S. Ct. at 2482-83.

[¶16]  The facts in this case are particularly analogous to those in *Robinson*.  There, an officer on patrol spotted an individual, Robinson, driving a vehicle; the officer had reason to believe that Robinson's license to drive was

suspended and confirmed that his license to drive was suspended; the officer conducted a traffic stop and arrested Robinson for driving while suspended; a post-arrest search of Robinson's coat led to discovery of a package containing illegal drugs. 414 U.S. at 220-23. The Supreme Court approved the search and seizure of the illegal drugs as a proper search and seizure incident to an arrest. *Id*. at 235-36.

[¶17] In *Robinson*, the Court held that "[i]t is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id*. at 235. The Court further observed that "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as fruits, instrumentalities, or contraband probative of criminal conduct." *Id*. at 236.

[¶18] If Pagnani had been wearing her jacket at the moment she was handcuffed, there would be no question that the search of her jacket would have been proper as a search incident to arrest for which no warrant is required. Here, however, Pagnani was wearing her jacket when advised that she was

under arrest, but she removed her jacket and sat on it before she was taken into physical custody. Pagnani argues that, because she was no longer wearing the jacket at the time she was handcuffed, the warrantless search of her jacket was improper.

[¶19] The holding in *Robinson* that, incident to a lawful arrest, police may, without a warrant, search an arrestee's person and items immediately associated with the person,[4] and seize weapons, items of contraband, or evidence of a crime found in the search, was reaffirmed in *Riley*, 134 S. Ct. at 2482-85. In *Riley*, the Court was called upon to apply the search incident to arrest doctrine to cell phones. The Court held that cell phones[5] believed to contain evidence of criminal activity could be seized incident to a lawful arrest, but qualified *Robinson* to hold that a subsequent search of the digital memory of the cell phones after the arrest could not be conducted without a warrant, or without exigent circumstances or application of some other exception to the warrant requirement. *Id*.

---

[4] In *United States v. Chadwick*, 433 U.S. 1, 15 (1977), the Court clarified that such searches must be limited to "personal property . . . immediately associated with the person of the arrestee."

[5] *Riley,* 134 S. Ct. at 2480, involved consolidated appeals in two cases involving subsequent searches of the digital memory of cell phones following seizure of the cell phones incident to lawful arrests.

[¶20]   In explaining its decision in *Riley*, 134 S. Ct. at 2483-88, the Supreme Court referred to its decision in *Chimel v. California*, 395 U.S. 752, 762-63 (1969), where it held that once the police arrest, or have probable cause to arrest, a suspect they do not need a warrant to search for weapons or evidence of criminal activity that might be readily concealed or destroyed.  The *Chimel* court further held that a search incident to an arrest could extend to items in the immediate area and associated with an arrestee.  *Id.* at 763.  "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  *Id*.

[¶21]   In considering the effect of *Chimel* on the case presented to it in *Riley*, the Court stated:

> We first consider each *Chimel* concern in turn.  In doing so, we do not overlook *Robinson*'s admonition that searches of a person incident to arrest, "while based upon the need to disarm and to discover evidence," are reasonable regardless of "the probability in a particular arrest situation that weapons or evidence would in fact be found."  Rather than requiring the "case-by-case adjudication" that *Robinson* rejected, we ask instead whether application of the search incident to arrest doctrine to this particular category of effects would "untether the rule from the justifications underlying the *Chimel* exception[.]"

*Riley*, 134 S. Ct. at 2485 (internal citations omitted). Following this directive, we conclude that applying the search incident to arrest doctrine to the search of Pagnini's jacket would not "untether the rule from the justifications underlying the *Chimel* exception." *Id.* Although there was no "evidence" of the charged OAS that might have been concealed within Pagnini's jacket, *Robinson* does not require such evidence:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson*, 414 U.S. at 235.

[¶22] Two years after *Robinson* was decided, we observed that once the issue is search of an area, not the person, "[t]his area within which a search is permitted depends upon the circumstances of each case and does not, therefore, admit of precise delineation. It has been variously described as the suspect's 'leaping range' . . . or the area reasonably within the defendant's

'lunge, reach or grasp.'" *State v. LeBlanc,* 347 A.2d 590, 595 (Me. 1975). A coat in a chair in which a person is seated is well within "leaping range."

[¶23] The police had probable cause to arrest Pagnani for OAS. Pagnani was wearing the jacket when she was advised that she was under arrest and throughout her interactions with the officer as she resisted arrest. *See State v. Moulton*, 1997 ME 228, ¶ 7, 704 A.2d 361 (stating that for purposes of the Fourth Amendment, "seizure of the person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen such that he is not free to walk away").

[¶24] The officer continued to tell Pagnani that she was under arrest and not to walk away, but she did not cooperate. Although Pagnani removed her jacket before being handcuffed, she had been told she was under arrest before she removed the jacket, and the jacket, though she was no longer wearing it, remained associated with her person. Because the jacket was on Pagnani's person at the time that she was advised that she was under arrest and remained associated with her person, even as she sat on the jacket, *see Chimel*, 395 U.S. at 755-56, 763, the officer's search of the jacket was a lawful search incident to arrest.

B.      Search of the Vehicle

[¶25]   The State further argues that the drug evidence discovered in Pagnani's jacket supplied a reasonable basis for the officer to search the passenger compartment of Pagnani's locked car.   *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").   Based on the trial court's findings that the search of Pagnani's vehicle was not supported by probable cause and was outside the scope of a vehicle search incident to arrest, the warrantless search of the vehicle was not justified by the evidence.   We affirm the court's suppression order as to the evidence found in the vehicle.

The entry is:

> The portion of the suppression order suppressing the evidence found in Pagnani's jacket is vacated.   The suppression order is affirmed in all other respects.   The case is remanded for further proceedings consistent with this opinion.

14

HJELM, J., with whom MEAD and JABAR, JJ., join, concurring in part and dissenting in part.

[¶26]  I concur with the portion of the Court's opinion affirming the suppression of evidence seized during the warrantless search of Donna Pagnani's vehicle.  The warrantless search of Pagnani's jacket, however, cannot be justified as a search incident to her arrest.  I therefore respectfully dissent from the Court's conclusion to the contrary and would affirm the suppression order in its entirety.

[¶27]  It is an elemental principle that all searches conducted by law enforcement officials must be reasonable.  U.S. Const. amend. IV.  Warrantless searches are per se unreasonable absent one of "a few specifically established and well-delineated exceptions" to the warrant requirement.  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted); *accord State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179.  Courts may not "lightly dispense[] with" the "requirement that a search warrant be obtained."  *Chimel v. California*, 395 U.S. 752, 762 (1969).

[¶28]  A search conducted as an incident to a lawful arrest is one exception to the warrant requirement.  *Id*. at 762-63.  For such a search to be lawful, however, it must be confined to accomplish at least one of two specifically delineated purposes underlying that doctrine: officer safety—that

is, searching for weapons or instruments that the arrestee might use against the officer or that would allow the arrestee to escape—and preventing the destruction or concealment of evidence. *Id.* These justifications define the physical scope of a permissible search incident to an arrest. As we have explained,

> The proper scope of a search incident to arrest extends to the area within the suspect's immediate physical control, the area from which he or she might gain possession of a weapon or disposable evidence. This area within which a search is permitted depends upon the circumstances of each case and does not, therefore, admit of precise delineation. It has been variously described as the suspect's leaping range, or the area reasonably within the defendant's lunge, reach or grasp. This Court has held a search valid under the *Chimel* doctrine if it encompasses an area within the conceivable control of the suspect.

*State v. LeBlanc*, 347 A.2d 590, 595 (Me. 1975) (citations omitted) (quotation marks omitted).

[¶29] The Supreme Court has stated that "it is the fact of custodial arrest which gives rise to the authority to search." *United States v. Robinson*, 414 U.S. 218, 236 (1973). Consequently, when a person is subject to a custodial arrest, the law enforcement officer may search the area within the arrestee's "conceivable control," an area identified at the time the *search itself* occurs. *LeBlanc*, 347 A.2d at 595-96; *United States v. Lyons*, 706 F.2d 321, 330 (D.C. Cir. 1983) ("[A] court must ask: was the area in question, *at the time it was*

*searched*, conceivably accessible to the arrestee . . . ." (emphasis added)); *cf.*
*Gant*, 556 U.S. at 351 ("Police may search a vehicle incident to a recent
occupant's arrest only if the arrestee is within reaching distance of the
passenger compartment *at the time of the search* . . . ." (emphasis added)). A
search beyond that area exceeds the purposes of a proper search incident to an
arrest and cannot be justified on that basis. As the Supreme Court has
explained, "If there is no possibility that an arrestee could reach into the area
that law enforcement officers seek to search, both justifications for the
search-incident-to-arrest exception are absent . . . ." *Gant*, 556 U.S. at 339; *see*
*State v. York*, 324 A.2d 758, 762-63 (Me. 1974) (["T]he rationale underlying the
validity of searches incident to, and contemporaneous with, lawful arrests
stems from the need to seize weapons and other things on the accused's person
or under his immediate control which might be used to assault an officer or
effect an escape or to prevent the destruction of evidence of the crime.").

[¶30] The State bears the burden of demonstrating that the warrantless
search is justified, *see Chimel*, 395 U.S. at 762, and, on this appeal, must establish
that the "court was compelled to make findings in its favor." *State v. Collier*,
2013 ME 44, ¶ 6, 66 A.3d 563. Further, because neither party requested that
the court issue findings of fact and conclusions of law beyond those contained

in its order, "we 'infer that the court found all the facts necessary to support its judgment . . . .'" *State v. Sasso*, 2016 ME 95, ¶ 19, 143 A.3d 124 (quoting *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003); *see also State v. Diana*, 2014 ME 45, ¶ 11, 89 A.3d 132 (explaining that we "will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision" (quotation marks omitted)).

[¶31]  The record fully supports the court's conclusion that, when the officer seized and then searched Pagnani's jacket on the porch, the jacket was not within her conceivable control.  Pagnani had been wearing the jacket but tossed it on a porch chair while she was on her cell phone with the Violations Bureau to try to get information about the matter being investigated.  A bit later, she sat down on the chair where she had put the jacket.  She was then placed under custodial arrest.  Even before the officer initiated the search, however, Pagnani was handcuffed with her arms secured behind her, and two other officers were leading her down the porch stairs *away* from the jacket and toward a police cruiser.  One of those officers walked in front of Pagnani and another officer walked behind her—in other words, between her and the jacket—and held onto one of her secured arms as she was taken to and placed inside a waiting cruiser.

[¶32]  In short, before the search occurred, Pagnani was restrained, she was outnumbered by police officers, and she was being led away from the porch where she had left her jacket.  Given these circumstances, it would have been impossible for Pagnani to reach into her jacket to obtain a weapon or an escape instrumentality, or to destroy or conceal evidence.  *See Gant*, 556 U.S. at 344 (concluding that the search was not authorized as an incident to the arrest where "five officers . . . outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched [the arrestee's] car"); *LeBlanc*, 347 A.2d at 595-96 (concluding that the area searched was within the arrestee's "conceivable control" where he was eight to ten feet from the area, he was not handcuffed, and "the presence of the police officers [was not] a sufficiently effective restraint to render the immediate surrounding area beyond his control").

[¶33]  The Court observes that "[i]f Pagnani had been wearing her jacket at the moment she was handcuffed, there would be no question that the search of her jacket would have been proper as a search incident to arrest, for which no warrant is required."  Court's Opinion ¶ 18.  That point persuasively demonstrates why the search that was *actually* conducted was illegal.  Pagnani was not wearing her jacket—and did not have access it—when the search

occurred. Rather, the officer searched through Pagnani's jacket only after she had been put in restraints and was under the physical control of two other officers. Neither of the essential justifications for a search incident to an arrest remained at that point, rendering such a search unconstitutional.[6]

[¶34] The record evidence supports—if it does not compel—the conclusion that when a police officer searched the jacket that Pagnani had left behind on a porch chair, she was not in a position to do anything with it. Rather, the jacket remained part of this encounter only because the same officer who had staked out her residence for two hours, purportedly to investigate a suspected motor vehicle violation, searched that article of clothing without any

---

[6] I recognize that some post-*Chimel* jurisprudence has provided a degree of tolerance in the absence of a close temporal relationship between an arrest and a search incident to that arrest—an approach that has drawn criticism from a leading Fourth Amendment commentator, who refers to those courts' "questionable assumption that persons arrested and restrained by police are nonetheless possessed of considerable freedom of movement" that would allow the arrestees, despite being restrained, to gain access to places where weapons and disposable evidence might be present. *See* Wayne R. LaFave, 3 *Search & Seizure: A Treatise on the Fourth Amendment* § 5.5(a) at 286, 293 n.33 (5th ed. 2012). The Supreme Court, however, has continued to ratify and reaffirm *Chimel*'s articulation of the limited circumstances where a search incident to arrest is proper, *see supra* Dissenting Opinion ¶¶ 28-29. *Arizona v. Gant*, 556 U.S. 332, 343 (2009); *New York v. Belton*, 453 U.S. 454, 460 n.3 (1981). As part of that construct, *Gant* has made clear that the existence of those circumstances is measured at the time the search is conducted, 556 U.S. at 351, which tightens the more casual temporal connection in which some courts indulged. Therefore, I do not hesitate to invoke the established principles originating in *Chimel* and ratified in later Supreme Court opinions.

Further, in this context, as stated above, *see supra* Dissenting Opinion ¶ 30, it is important to bear in mind that, in our appellate role, we are obligated to examine the record and the state of the law to determine whether there is "any reasonable view of the evidence" that supports the court's order on the motion to suppress. *State v. Diana*, 2014 ME 45, ¶ 11, 89 A.3d 132 (quotation marks omitted). Given the ongoing vitality of the analysis set out in *Chimel*, this standard of review can only lead to the conclusion that the court's order suppressing evidence obtained from the search of Pagnani's jacket is supported by a reasonable assessment of the evidence.

legal basis. The court committed no error by suppressing the evidence obtained through that illegal search, just as the court correctly determined that the officers' search of her vehicle was illegal. I would affirm the entirety of the suppression order, and therefore I dissent from the portion of the Court's opinion vacating part of that order.[7]

---

[7] On this appeal, the State also argues that there was probable cause to search Pagnani's jacket. This argument was not meaningfully presented below because the clear focus of the State's contention was that the search was properly incident to an arrest, which makes it understandable that the court did not mention any claimed independent probable cause justification for the search. *See State v. Wheeler*, 252 A.2d 455, 458 (Me. 1969) ("It is a well established principle of Maine appellate procedure in criminal proceedings that questions not properly raised so as to have been considered and ruled upon by the trial judge will not be considered and passed upon for the first time on appeal.").

Even if the State preserved the argument for appellate consideration, it would be unavailing for two reasons. First, the court was not compelled to find facts necessary to support the conclusion that there was probable cause to believe that the jacket constituted or contained evidence of a crime. *See State v. Bilynsky*, 2007 ME 107, ¶¶ 16, 18-25, 932 A.2d 1169 (describing the standard of review of a probable cause determination). As noted in the text, *see supra* Dissenting Opinion ¶ 30, the Court must infer that the motion court made the findings necessary to support its ultimate determination, which, as to this aspect of the issue, was that probable cause did not exist. The record did not compel the court to accept the State's evidence about out-of-state drug-related criminal history, because there was evidence that the only such charge was dismissed, and the court was fully entitled to reject the officer's unsupported testimony that he believed the charge was still pending. That would leave the State to argue that Pagnani's handling of the jacket created probable cause—something that, in my view, was not sufficient to support such a determination. *See State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179 ("Probable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." (alteration omitted) (quotation marks omitted)).

Second, even the existence of probable cause—which I submit is absent—would be insufficient to make the evidence admissible, because the State would also need to establish some justification for the warrantless seizure and search of the jacket. *See id*. The State has not even attempted to argue any exception to the warrant requirement that would rest solely on a predicate determination of probable cause.

Janet T. Mills, Attorney General, and Johanna L. Gauvreau, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant State of Maine

Jason R. Ranger, Esq. (orally), Lewiston, for appellee Donna Pagnani

Androscoggin County Unified Criminal Docket docket number CR-2017-141
FOR CLERK REFERENCE ONLY