STATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL DOCKET
AUGUSTA
DOCKET NO. CR-19-2421

STATE OF MAINE

V.

PARRIS DANIELS

**DECISION ON MOTION TO SUPPRESS**

## INTRODUCTION

This matter is before the court on the Defendant's (Parris Daniels's) Motion to Suppress evidence dated December 6, 2019. A testimonial hearing was held on March 2, 2020, at which the court received the testimony of Special Agent Ryan Dinsmore of MDEA and the Waterville Police Department and Laura Harvey, a front desk clerk employed by the Best Western Hotel in Waterville.

The evidentiary hearing was left open at the request of counsel for Mr. Daniels in order to have another witness testify in support of the motion. That witness, Ms. Nina Guadalupe, resided in New York City. When the COVID-19 pandemic struck later in March, 2020, no one from New York was permitted to attend court in Maine without being subject to a two-week quarantine. Moreover, New York City itself experienced a major surge in COVID-19 cases at that time. As a result, the record in this case stayed open for many months.

On September 2, 2020, counsel for Mr. Daniels moved to withdraw, which motion was granted on September 3, 2020. New counsel was appointed the same day. On October 27, 2020, the court was informed that Ms. Guadalupe's testimony was not needed, and the evidentiary record on the motion to suppress could be closed

and the court could decide the matter on the basis of the evidence presented at the March 2, 2020 hearing.

The court has reviewed the transcript of the March 2, 2020 hearing and has also reviewed its own notes. Based on the evidence presented, the court makes the following findings of fact.

## FACTS

On or about November 10, 2019, Special Agent Dinsmore [1] received information from his colleague, Officer Mikayla Hodge, that she had received information that there was an unusually high level of "pedestrian traffic" to rooms 105 and 110 at the Best Western Hotel in Waterville. The source of this information was Laura Harvey, a front desk clerk at the hotel. As a result of this information, Officer Hodge received a list of persons staying at the hotel, which she shared with Agent Dinsmore. Dinsmore reviewed the list and recognized the name of Parris Daniels. In particular, Dinsmore was aware that in September, 2019, Daniels had been arrested and charged with a drug offense and had been released on bail with a condition that he not use or possess illegal drugs, and subject to search of his person or residence "upon articulable suspicion." *See State v. Parris Daniels*, KEN-CR-2019-1949. *See* Hearing Transcript at 8-10.

Dinsmore, along with several other officers, then went to the Best Western Hotel. Another officer told Dinsmore that he had seen a man matching the description of Parris Daniels go outside to the parking lot, where he was speaking to another individual sitting in a vehicle. The other officer pointed out the vehicle to Dinsmore, who immediately recognized the operator of the vehicle as someone who had engaged in and been convicted of drug trafficking in central Maine sometime in

---

[1] At the time of the evidentiary hearing, Agent Dinsmore was assigned to MDEA. At the time of the search at issue in this case, he was working for his home agency, the Waterville Police Department, as a patrol officer.

the past. Agent Dinsmore was able to name the man in the vehicle (Donald Dennis), and also testified that he had recent (within the last several months) intelligence information that Dennis was again engaged in trafficking in illegal drugs. *See* Transcript at 14.

On cross-examination, Agent Dinsmore testified that he personally spoke to the front desk clerk, Ms. Harvey, who told him "[t]hat there were two rooms that seemed to be getting a lot of traffic this evening and it appeared to be drug related." Transcript at 20.

Laura Harvey was called by Mr. Daniels. She was not entirely sure of the night of November 10, 2019, but she did recall that she checked Daniels into the hotel and that she provided a list of the guests staying at the hotel to Officer Hodge, which she did on a routine basis. When asked if she had told the police officer that she thought there was drug activity going on "that particular night," she said: "I may have," but she did not specifically recall. Tr. at 37. She acknowledged that she did not personally witness a lot of activity in or around rooms 105 and 110, but may have relied on other employees at the hotel for that information. Tr. at 38. Ms. Hodge did not have a strong memory of November 10, 2019, but testified that she would not have used the term, "drug activity." Rather, she would have told the police there was "suspicious activity," which might include drug activity. Tr. at 43.

Based on this information, Agent Dinsmore conducted a search of Daniels in the parking lot and found scheduled drugs on him. He then informed Daniels that a search of his hotel room would also be conducted. Daniels handed Dinsmore his room key. Ms. Guadalupe was found in the room, as was a firearm, but no illegal drugs or paraphernalia were found inside the room. Based on the search of Daniels and the discovery of scheduled drugs on him, and the search of the hotel room where the gun was found, Daniels has been charged with Aggravated Trafficking in Cocaine (Class A) (Count 1), Possession of a Firearm by a Prohibited Person (Class

3

C) (Count 2), and Violation of Condition of Release (Class E) (Count 3). The Indictment also seeks the forfeiture of the firearm (Count 4).

## DISCUSSION

By the terms of the bail bond in Docket No. KEN-CR-2019-1949, dated September 7, 2019, Daniels was subject to a condition that he submit to a search of his person and/or residence for illegal drugs "upon articulable suspicion." The phrase "reasonable, articulable suspicion" is generally used to describe the authority of a law enforcement officer to detain an individual when "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Gerry*, 2016 ME 163, ¶ 12, 150 A.3d 810. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Law Court has made it clear that the standard is a low one, and has stated: "In general, '[t]he only requirement we have imposed on the reasonable articulable suspicion standard is that an officer's suspicion be more than mere speculation or an unsubstantiated hunch.'" *State v. King*, 2009 ME 14, ¶ 6, 965 A.2d 52 *quoting State v. Porter*, 2008 ME 175, ¶ 11, 960 A.2d 321, 323.

Here, the court concludes that Agent Dinsmore did have reasonable articulable suspicion that Daniels was engaged in illegal drug activity and, therefore, was justified in conducting the searches of him and the hotel room. The facts within the officer's knowledge, and the reasonable inferences from those facts, justified the officer's suspicions, namely, the officer's awareness that just 2 months earlier Daniels had been arrested and charged with a drug offense; the information from Officer Hodge, which was based on information from the employee at the Best Western Hotel, that there was an unusually high level of pedestrian traffic near rooms 105 and 110 at the hotel; that Daniels was staying at the hotel on the evening in question and was observed by another officer leaving one of those rooms and going to the parking lot, where he was seen talking with a man in a vehicle who Dinsmore knew had been convicted of drug trafficking, and about whom Dinsmore

4

had recent intelligence to the effect that the man was again engaged in illegal drug activity. All of this information, and the reasonable inferences therefrom, amounted to reasonable articulable suspicion, not mere conjecture or hunch.

At the testimonial hearing, then-counsel for Daniels also argued that Dinsmore had no authority to enter and search Daniels's hotel room where the gun was located. Rather, he maintained that the officer could only charge Daniels with violating a condition of his release if he refused to allow the search of the hotel room, and then seek a search warrant. This argument fails, however, because Daniels did not refuse to allow the search of his room upon Dinsmore's demand. On the contrary, Daniels gave Dinsmore the key to the room. In short, Daniels was obligated to submit to a search of his residence, which the court construes to include his rented hotel room, upon articulable suspicion, and he complied with that requirement.

The entry is:

Defendant's Motion to Suppress is DENIED.

Dated: October 30, 2020

William R. Stokes
Justice, Superior Court

5