STATE OF MAINE                                    KENNEBEC CR-20-1794

STATE OF MAINE

V.                                    ORDER AFTER SECOND HEARING
                                      AND SUPPLEMENTAL ARGUMENT

MARIA GOMEZ

On October 4, 2021 the Court issued an Order partially granting the Defendant's Motion to Suppress. That Order permitted the parties to present evidence on the issue of consent which had not been previously addressed or argued, and it also provided for supplemental briefing. The Court has reviewed the previous Order, the testimony at both hearings, and the written arguments from the attorneys, the last of which was received on December 20, 2014.

At the second hearing on December 14, 2020 the Court heard testimony from Officer Sarah Rogers of the Augusta Police Department. She was called to the police station in Augusta by the Maine Drug Enforcement Agency to conduct the body cavity search of the Defendant.

Officer Rogers never asked the Defendant any questions about the allegations against her, but was informed by Special Agent Walker that she had admitted "packing" drugs, which the parties agree means to carry drugs in her vagina. Officer Rogers accompanied the Defendant into the bathroom where she searched her and directed her to remove a package of drugs from her vagina. Officer Rogers admitted she did not read the Defendant her rights even though the Defendant was in handcuffs when Officer Rogers arrived. She simply directed her into the bathroom and told her to remove the drugs from her body.

The Defendant also testified. She stated that she was not read her rights by Officer Rogers, and that no law enforcement officer ever asked for her consent, either orally or by way of a consent form. In addition, she stated that no police officer ever told her that they needed a search warrant to conduct a body cavity search in the absence of consent.

The State reminds the Court that a search conducted with consent is a well-accepted exception to the need for a warrant to conduct a search of a person. *State v. Nadeau*, 2010 ME 71, par. 17. It also points out that a person can constitutionally consent to a search without doing so verbally, and that a court can consider gestures and actions. *Id.* par. 18. The State further notes that the Defendant nodded her head when told that a female officer would assist her in the bathroom, and asserts that after Officer Rogers arrived the Defendant "required no prompting" to remove the drugs from her vagina. [State's Memo re Consent, pg. 4]. The State does note that when Officer Rogers arrived and put on surgical gloves, she tells the Defendant, "We're going to go into the bathroom." At that point, the Defendant asks permission to stand, and when is permitted to do so, follows Officer Rogers into the bathroom.

The Court finds that the State has failed to prove by a preponderance of evidence that the Defendant consented to this body-cavity search. As the Defense notes, the Court should look to the totality of the circumstances in determining if this burden is met. Unlike the Defendant in *Nadeau*, the Defendant here was in custody. She was handcuffed during much of her detention, up until the arrival of Officer Rogers. She was never administered *Miranda* warnings at any time during her detention, and never had the opportunity to have advice of counsel before making the decisions whether to answer questions or to consent to a search of her vagina. While in custody, she was given directions to follow, rather than choices to make. And in terms of the issue presented at this stage of the proceedings, the Court agrees with the Defense that she was never told "in any way that she had the legal option" to decline to have her vagina searched, or to await the issuance of a warrant. Under the test of "objective reasonableness", the Court concludes that a typical reasonable person would have understood these exchanges with law enforcement to mean that she had no real choices available to her other than to follow the directives of law enforcement and submit to the search.

With respect to the State's argument regarding inevitable discovery, the Court has reviewed the parties' arguments made before and after the December 14, 2021 hearing, as well as *Nadeau* and *State v. Prinkerton*, 2018 ME 16. In *Nadeau*, the Court adopted the First Circuit standard in *State v. Silvestri*, 787 F.2d 736, 744 (1st Cir. 2001) which added a third requirement for the State to establish in order to make out the inevitable discovery exception. Those three elements are: first, that the evidence would have been gained lawfully from information that is truly independent from the warrantless search; second, that the evidence inevitably would have been discovered by such lawful means; and third, that the application of

the exception neither provides an incentive for police misconduct nor significantly weakens fourth amendment protections. *Id.* par. 38. Prior to *Nadeau*, the Law Court had required the establishment of only the first two. *State v. Cormier*, 2007 ME 112. In *Prinkleton*, the Law Court also stated that it is the State's burden to establish "inevitable discovery" by a preponderance of the evidence. *Id.* par. 18.[1]

In this case, assuming for the sake of argument that the State could, as it claims, establish that the evidence of the drugs could have lawfully been obtained from information truly independent of the warrantless search; and that the evidence would inevitably have been discovered by such lawful means, the Court finds that the State has not established by the requisite standard that application of this standard "neither provides an incentive for police misconduct nor significantly weakens Fourth Amendment protections." *Id.* par. 19.

The Law Court in both *Nadeau* and *Prinkleton* was presented with very different facts that presented here. In *Nadeau*, the police "sought and obtained a search warrant within days of coming into possession of the computer" and even though they "mistakenly believed Nadeau had consented to the seizure…they viewed a warrant as a necessary predicate to the forensic examination in recognition of the fact that a person's consent can be withdrawn." *Nadeau*, par. 41. In addition, there was no incentive for police misconduct as they actually did obtain a warrant which "demonstrated an absence of overreaching and an intention to comply with the fundamental protections of the Fourth Amendment." *Id.* par. 44.

Similarly, in *Prinkleton*, a warrant was obtained within hours of the search, and the Law Court noted the "good faith belief they had probable cause that there was criminal ongoing criminal activity…and that there were exigent circumstances justifying their entry to secure the apartment." And importantly, the search of the apartment was actually not done until the warrant was actually obtained. *Id.* par. 39. In this case, no warrant was sought or obtained, and no claim of good faith or exigent circumstances has been made.

More fundamentally, in this case there were multiple constitutional violations. The Defendant was clearly in custody but the MDEA made the inexplicable decision not to provide *Miranda* warnings. She was directed her to comply with a search of her vagina, but never officers never came close to

---

[1] The Law Court in *Prinkleton* recognized the importance of distinguishing between situations involving "warrantless searches that are never followed by a warrant and warrantless searches that are followed by a warranted search." Citing *Silvestri*, 787 F.2 736, 744 (1st Cir. 1986). In this case there is no evidence the State obtained, or really ever began, the process for obtaining a search warrant. As the First Circuit noted in *Silvestri*, the fact that a warrant has been obtained removes speculation as to whether a magistrate would in fact have issued a warrant on the facts and also ensures…..that the fourth amendments has not been totally circumvented." *Id.* at 745.

offering her the option of declining consent, or holding her until a search warrant application was approved by a neutral magistrate.

The Court concludes applying this exception to this warrantless, non-consensual, custodial search of the Defendant - in addition to the clear failure to administer *Miranda* warnings – would create negative incentives for law enforcement to comply with Fourth Amendment protections. Those important protection would therefore be weakened. Finally, it is not lost on the Court that what is at issue here is not the search of an electronic device ( *Nadeau*) or even a residence ( *Prinkleton*). This search involved a body cavity of the Defendant.

The Court therefore concludes that the inevitable discovery doctrine should not be applied in this case.

The Defendant's motion to suppress the search of the Defendant's person is therefore GRANTED in full.

_____11/28/2022_____
**DATE**

_____
**SUPERIOR COURT JUSTICE**